# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ALEXANDER AARON GINZBURG,

    **Plaintiff**,

        v.

JORGE ALBERTO MARTÍNEZ-DÁVILA, *et al.*,

    **Defendants**.

**Civil No.** 19-1254 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

On March 22, 2019, the Court denied plaintiff Alexander Aaron Ginzburg ("Ginzburg")'s request for a temporary restraining order ("TRO") pursuant to Federal Rule of Civil Procedure 65 ("Rule 65"). (Docket Nos. 4 and 10.) Ginzburg moves for reconsideration. (Docket No. 11.) For the reasons set forth below, Ginzburg's motion for reconsideration is **DENIED**.

## I. Background

This litigation concerns a purported breach of contract. (Docket No. 1.) Ginzburg is a film producer. Id. a p. 1. Defendant Jorge Alberto Martínez-Dávila ("Martínez") is an actor,

film producer, and the sole member of Utopia Film LLC ("Utopia Film"). Id. at pp. 1—2.[1]

Around 2016 or 2017, Martínez planned to make a film and began some pre-production work. Id. at p. 2. The Puerto Rico Treasury Department provided Martínez with a tax credit pursuant to the Puerto Rico Film Industry Economic Incentives Act ("Act 27"), P.R. Laws Ann. tit 23, section 11006b. Id. at p. 3. Act 27 provides "grantees engaged in film projects or infrastructure projects . . . a credit against [certain] taxes." P.R. Laws Ann. tit 23, § 11006b(a). The tax credit is valued at forty-percent of the "amounts certified by [an] Auditor as disbursed in connection with all Puerto Rico production expenditures." Id. § 1106b(b).[2] Grantees may sell the tax credit, the proceeds of which are "exempt

---

[1] Ginzburg invokes this Court's diversity jurisdiction, alleging complete diversity of citizenship among the parties, and that the amount in controversy exceeds $75,000. Docket No. 1 at p. 3; citing 28 U.S.C. § 1332. The verified complaint names the following entities as defendants: Martínez, Katia Parrilla "Parrilla," the conjugal partnership constituted by Martínez and Parrilla, and Utopia Film. (Docket No. 1. at p. 1.) Ginzburg resides in San Juan, Puerto Rico. Id. at p. 1. Martínez and Parrilla reside in Florida. Id. The citizenship of Utopia Film is "determined by the citizenship of its members." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) (citation omitted). Because Martínez is a citizen of Florida, Utopia Film is also a citizen of Florida. The Court is satisfied that, based on the allegations set forth the verified complaint, diversity jurisdiction exists in this civil action.

[2] The amount of the tax credit increases if the grantee complies with additional requirements, including the commission of screenwriters and directors who are Puerto Rico residents. P.R. Laws Ann. tit 23, § 11006b(b)(1). The tax credit, however, "may never exceed ninety percent (90%) of the total Puerto Rico production expenditures." Id. § 1106b(b)(F).

from the payment of any tax imposed by the Government of Puerto Rico." Id. § 1106b(e).

Funds for the film dissipated, prompting Martínez to seek additional financing. Id. at p. 3. Ginzburg and Martínez purportedly entered into an agreement, evidenced by e-mail and text message communications. Id. Martínez agreed to transfer the tax credit and Utopia Film to Ginzburg. Id. at p. 4. The tax credit is "potentially worth about $730,000." Id. Ginzburg agreed to fund the entire film, ultimately contributing $901,310.90 to the project. Id. at p. 6. Martínez failed, however, to transfer the tax credit and Utopia Film to Ginzburg. Id. at p. 8.

Ginzburg asserts a breach of contract claim against Martínez, Parrilla, the Martínez-Parrilla conjugal relationship, and Utopia Film (collectively, "defendants") pursuant to Puerto Rico law. Id. at p. 9; see P.R. Laws Ann. tit. 31, § 3018. Should the Court find that the parties did not enter into an enforceable contract, Ginzburg requests that the Court construe the money he contributed to the film as a loan. Id. at p. 10. Ultimately, Ginzburg seeks "payment of $901,310.90." Id.

Ginzburg moved for a temporary restraining order ("TRO") to enjoin the defendants from "selling, pledging, transferring or assigning the title and ownership of [Utopia Film] and the tax credit." (Docket No. 4 at p. 2.) The Court denied the motion for

a TRO.  (Docket No. 10.)  Ginzburg moves for reconsideration. (Docket No. 11.)  The arguments presented in support of Ginzburg's motion for reconsideration are unavailing.

**II. Motion for Reconsideration Standard**

The Federal Rules of Civil Procedure "do not specifically provide for the filing of motions for reconsideration." Sánchez-Pérez v. Sánchez-González, 717 F. Supp. 2d 187, 193-94 (D.P.R. 2010) (Besosa, J.) (citation omitted).  "[I]t is settled in [the first] circuit[, however,] that a motion which ask[s] the court to modify its earlier disposition of [a] case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 (1st Cir. 2005) (citation omitted).

Pursuant to Federal Rule of Civil Procedure 59(e), a district court will alter its original order only if it "evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (citation omitted).  A motion for reconsideration does "not provide a vehicle for a party to undo its own procedural failures [or] allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment." Iverson v. City of Bos., 452 F.3d 94, 104 (1st Cir. 2006) (citation omitted).  "Rule 59(e) does not exist

to allow parties a second chance to prevail on the merits . . . [and] is not an avenue for litigants to reassert arguments and theories that were previously rejected by the Court." Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 322 F.R.D. 439, 441 (D.P.R. 2017) (Besosa, J.) (citations omitted). "Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly." Morán-Vega v. Rivera-Hernández, 381 F. Supp. 2d 31, 36 (D.P.R. 2005) (Domínguez, J.).

In deciding a motion for reconsideration, the reviewing court has considerable discretion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004). "As a general rule, motions for reconsideration should only be exceptionally granted." Villanueva-Méndez v. Nieves-Vázquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (Domínguez, J.). "Rule 59(e) relief is granted sparingly." Biltcliffe, 772 F.3d at 930.

**III. Discussion**

A temporary restraining order "is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available." Pro-Choice Network v. Schenck, 67 F.3d 377, 389-99 (2d Cir. 1995). The following four factors govern the Court's TRO analysis: (1) the likelihood that the movant will succeed on the merits; (2) the potential for

irreparable harm if the injunction is denied; (3) the balance of the relevant equities (*i.e.*, the hardship that will befall the defendants if the TRO issues contrasted with the hardship that will befall Ginzburg if the TRO does not issue); and (4) the effect of the Court's ruling on the public interest. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).[3]

Injunctive relief is "a matter for the discretion of the district court and is reversible, of course, only for an abuse of discretion." Id. Temporary restraining orders "must be used sparingly and only in cases where the need for extraordinary equitable relief is clear and plain." Northwest Bypass Grp. v. United States Army Corps. of Eng'rs, 453 F. Supp. 2d 333, 338 (D.N.H. 2006) (internal citation and quotation omitted); see Mass. Coalition of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981). Ginzburg shoulders the burden of establishing that a TRO is warranted. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996).

---

[3] Although Planned Parenthood League v. Bellotti, 641 F.2d 1006, concerned a preliminary injunction, courts employ the "same four-factor analysis" to "determine whether to issue a temporary restraining order." OfficeMax Inc. v. County Quick Print, Inc., 709 F. Supp. 2d 100, 106 (D. Me. 2010) (citation omitted).

**A.   Ginzburg Failed to Demonstrate Irreparable Harm**

Ginzburg contends that the potential "dissipation of assets by the defendants" constitutes irreparable harm. (Docket No. 11 at p. 2.) According to Ginzburg, a TRO will preserve the tax credit and Utopia Film. Id. at 3. These assets, Ginzburg argues, are "indispensable for this Honorable Court to grant a meaningful remedy." The Court disagrees.[4]

To demonstrate irreparable harm, Ginzburg must establish that legal remedies are inadequate. Idaho v. Coeur D'Alene Tribe, 521 U.S. 261, 292 (1997) (holding that the "inadequacy of a legal remedy is a prerequisite for equitable relief in any case"); See Infusaid Corp. v. Intermedics Infusaid, Inc., 739 F.2d 661, 668

---

[4] In Grupo Mexicano De Desarrollo v. Alliance Bond Fund, the United States District Court for the Southern District of New York issued a preliminary injunction in a breach of contract action. 527 U.S. 308, 327 (1999). The preliminary injunction enjoined debtors from dissipating assets to ensure the satisfaction of an "almost certain" judgment. 527 U.S. 308, 327 (1999). The Supreme Court reversed, holding that the district court "had no authority to issue a preliminary injunction preventing [the debtors] from disposing of their assets" because "such a remedy was historically unavailable from a court of equity." Id. at 332-33 (noting that "the equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence"). In a subsequent action, the District Court for the District of Massachusetts denied a motion seeking to freeze "funds in order to secure future payment." Charlesbank Equity Fund II, Ltd. v. Blinds To Go, 370 F.3d 151, 155 (1st Cir. 2004). On appeal, the First Circuit Court of Appeals noted the Supreme Court's decision in Grupo Mexicano de Desarrollo, but "assume[d] for argument's sake that the district court had the authority to grant the relief requested – a preliminary injunction in the nature of a freeze order." Id. at 159. Proceeding on this assumption, the First Circuit Court of Appeals affirmed the denial of injunctive relief because the movant "failed to make the requisite showing of irreparable harm." Id. at 163. Similarly, this Court need not address whether the Supreme Court's decision in Grupo Mexicano de Desarrollo is dispositive. Ginzburg's motion for a TRO is denied because he failed to demonstrate irreparable harm.

(1st Cir. 1984) ("[T]he general rule is if there is an adequate remedy at law, equitable relief is unavailable."). "Legal remedies traditionally involve money damages [whereas equitable remedies] are 'typically coercive, and are enforceable directly on the person or thing to which they are directed.'" Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc., 356 F.3d 731, 736 (7th Cir. 2004).

This litigation is an attempt to recover legal damages. Ginzburg maintains that he is entitled to the tax credit and ownership of Utopia Film. (Docket No. 1.) Should these assets become unavailable, however, Ginzburg seeks a monetary award of $901,301.90. (Docket No. 1 at p. 10.) By doing so, Ginzburg recognizes that money damages are sufficient to remedy the harm he purportedly suffered. See CMM Cable Rep., Inc. v. Ocean Cost Props., 48 F.3d 618, 622 (1st Cir. 1995) (holding that "an entitlement to money damages, without more, rarely constitutes an adequate basis for injunctive relief"). Accordingly, a TRO is not appropriate in this action. See Charles Equity Fund II, 370 F.3d

Civil No. 19-1254 (FAB)                                               9

at 162 (denying motion for injunctive relief, because the movant "[sought] an award of pecuniary damages" to "make it whole").[5]

Ginzburg fears that he "may end up without any means to enforce a judgment or collect the amounts he is owed." (Docket No. 4 at p. 7.) The potential inability of defendants to satisfy a future judgment is, however, an insufficient basis to grant injunctive relief. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996) (holding that "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm"); Merill Lynch, Pierce & Smith, Inc., v. Bishop, 839 F. Supp. 68, 70 (D. Me. 1993) ("[E]conomic harm in

---

[5] See also 4 MVR, LLC v. Warren W. Hill Constr. Co., Case No. 12-10674, 2012 U.S. Dist. LEXIS 102204 *13 (D. Mass. July 23, 2010) ("Because a damages award will make 4 MVR whole, its legal remedy is adequate and does not support a finding of irreparable harm."); Fruth v. Zanic, Case No. 06-411, 2006 U.S. Dist. LEXIS 73044 *10 (N.D. Ohio Oct. 6, 2006) (holding that the plaintiff failed to demonstrate irreparable harm by alleging that defendants "will be unable to satisfy any money judgment"); Craig v. Pepperidge Farm, Inc., Case No. 06-954, 2008 U.S. Dist. LEXIS 69604 *4 (S.D. Ind. Sept 15, 2008) (denying motion for injunctive relief because the "only rationale offered for the relief requested at this point is the economic or monetary damage plaintiff McGuire expects to suffer . . . This loss is fully measurable, and McGuire's legal remedy appears completely adequate to provide him with a remedy for this loss").

and of itself is not sufficient to constitute irreparable harm.").[6] Inherent in every breach of contract action is the possibility that the Court will award a monetary judgment that the defendant cannot satisfy.  Granting a TRO based on this contingency would obliterate the irreparable harm requirement.  See Alvin J. Coleman & Son, Inc. v. Francis Harvey & Sons, Inc., Case No. 12-40068, 2012 U.S. Dist. LEXIS 110152 *10 (D. Mass. Aug. 7, 2012) (The "possibility that Plaintiffs will be unable to satisfy any judgment they may obtain against Defendants . . . [is] a statement that can be made by virtually every plaintiff suing for money damages").  The absence of irreparable harm compels the Court to deny Ginzburg's motion for reconsideration.

**III. Conclusion**

For the reasons set forth above, Ginzburg's motion for reconsideration is **DENIED**.  (Docket No. 11.)  The Court **ORDERS**

---

[6] Ginzburg cites Westernbank P.R. v. Kachkar for the proposition that an asset freeze is appropriate when "the plaintiff creditor asserts a cognizable claim to specific assets of the defendant." Case No. 07-1606, 2009 U.S. Dist. LEXIS 78726 *30 (D.P.R. Sept. 1, 2009) (Delgado-Colón, J.)  Kachkar is, however, inapposite. Id.  The plaintiff in Kachkar alleged that the defendants committed fraud by submitting "duplicate, inaccurate and altered invoices on a regular basis in order to obtain more funding than it was supposed to receive." Id. at *38.  The court held that "in a fraud situation as this case presents, [the plaintiff] can show that it would suffer irreparable harm easily because of the 'strong indication that [the defendants] may dissipate or conceal assets." Id. at *41. (citing Mirco Signal Research, Inc. v. Otus, 417 F.3d 28 (1st Cir. 2005)).  Ginzburg merely alleges that that the defendants have assets that belong to him, not that the defendants are committing fraud.

Ginzburg to serve upon the defendants the following documents **no later than April 1, 2019**.

1. The Verified Complaint (Docket No. 1);

2. The *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction and Attachment (Docket No. 4);

3. The Order denying the *Ex Parte* Motion for Temporary Restraining Order, Preliminary Injunction and Attachment (Docket No. 10);

4. The Motion for Reconsideration (Docket No. 11);

5. And this Order.

The service shall be deemed service upon all of defendant's officers, employees, attorneys and agents.

The Court's previous ORDER that this case be returned to the docket of Judge Pedro Delgado-Hernández is **VACATED**. Defendants will answer the complaint and respond to the motion for preliminary injunction **no later than April 15, 2019**. Once defendants answer the complaint and respond to the motion for preliminary injunction, the Court will enter appropriate orders.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 26, 2019.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE